**NON-CONFIDENTIAL**
Appeal No. 2012-1666

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

MOTOROLA MOBILITY LLC
(formerly known as Motorola Mobility, Inc.),

*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

and

APPLE INC.,

*Intervenor*.

---

On Appeal from the United States International Trade Commission
in Investigation No. 337-TA-745

---

**REPLY BRIEF OF APPELLANT
MOTOROLA MOBILITY LLC**

---

Charles K. Verhoeven
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
(415) 875-6600

David A. Nelson
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 W. Madison St., Suite 2450
Chicago, IL 60661
(312) 705-7400

Edward J. DeFranco
Alexander Rudis
Mark D. Baker
Matthew A. Traupman
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

*Attorneys for Appellant Motorola
Mobility LLC*

# <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Motorola Mobility LLC certifies the following:

1.    The full name of every party or amicus represented by me is:

Motorola Mobility LLC, formerly known as Motorola Mobility, Inc. On June 22, 2012, Appellant Motorola Mobility, Inc. was converted into a Delaware limited liability company, changing its name to Motorola Mobility LLC.

2.    The name of the real parties in interest represented by me is:

None.

3.    All parent corporation and any publicly held companies that

own 10 percent or more of the stock of the party or amicus curiae

represented by me are:

Motorola Mobility LLC is a wholly owned subsidiary of Google Inc., a publicly held company.

4.    The names of all law firms and the partners or associates that

appeared for the party or amicus now represented by me in the trial court or

agency or are expected to appear in this Court are:

See the Addendum to Motorola's Certificate of Interest on the following page.

## ADDENDUM TO MOTOROLA'S CERTIFICATE OF INTEREST

The names of all law firms and partners or associates that appeared for the party now represented by me in the agency or that are expected to appear in this court are:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Paul Brinkman
Alex Lasher
Patrick Fitch
Richard Erwine
Brian Cannon
Abhishek Bapna
Anthony Pastor
Marshall M. Searcy
Kevin Smith
Jeffrey N. Boozell
Marc K. Weinstein
Johnny Yeh
Matthew Traupman
David Perlson
Eric Wall
Ray Nimrod
Nilakshi Parnidgamage
Kevin P.B. Johnson
Matthew Korhonen
Shawna Reeder
Tigran Vardanian
Amy Signaigo
Aaron Perez-Daple
Anastasia Fernands
Robert Stone
David Elihu
Stephen T. Pope
Charles R. Donohoe
David Nelson
Jennifer Bauer

Peter Hawkins
Robert Cleary
Edward DeFranco
Mark Baker
Stephen Straub
Alexander Rudis
Zachariah Summers
Douglas Kochelek
David Eiseman
Gregory S. Maskel
Charles K. Verhoeven

STEPTOE & JOHNSON LLP

Charles F. Schill
John Caracappa
Alice Kipel
Jamie Beaber
Chong Park
Tiffany Miller
Rachel M. Hofstatter
Alison Taroli

WINSTON & STRAWN LLP

Michael Brody
Peter Chassman
James Hurst
Phillip Price
Jonathan Retsky
Joshua Wyde

FOSTER, MURPHY, ALTMAN & NICKEL, PC

F. David Foster
David F. Nickel

Respectfully submitted,

Dated:  June 14, 2013          By:  _____*s/Edward J. DeFranco*_____
                                    Charles K. Verhoeven
                                    QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP
                                    50 California St., 22nd Floor
                                    San Francisco, CA  94111
                                    Tel.  (415) 875-6600
                                    Fax.  (415) 875-6700

                                    Edward J. DeFranco
                                    Alexander Rudis
                                    Mark D. Baker
                                    Matthew A. Traupman
                                    QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP
                                    51 Madison Ave., 22nd Floor
                                    New York, NY  10010
                                    Tel.  (212) 849-7000
                                    Fax  (212) 849-7100

                                    David A. Nelson
                                    QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP
                                    500 W. Madison St., Suite 2450
                                    Chicago, IL  60661
                                    Tel.  (312) 705-7400
                                    Fax  (312) 705-7401

                                    *Attorneys for Appellant Motorola*
                                    *Mobility LLC*

Confidential
Material Omitted

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... vii

TABLE OF ABBREVIATIONS ................................................................ viii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................5

I.    THE COMMISSION ERRED BY FINDING THAT APPLE
      DOES NOT INFRINGE CLAIM 12 OF THE '333 PATENT .............5

      A.    Apple's Products Infringe After Deletion Of a Push-
            Enabled Application (Apple/ITC Contention #1) .......................5

            1.    Apple and the ITC Improperly Construe "A
                  Change" to Mean "Every Change" ...................................6

            2.    Motorola Preserved Its Argument That Apple
                  Infringes After Deletion of Push-Enabled
                  Applications ................................................................... 12

            3.    Apple's Devices Infringe Even If "A Change"
                  Means "Every Change" .................................................. 15

      B.    Apple's Products Also Infringe After Installation of
            Push-Enabled Applications Because Claim 12 Does Not
            Require Direct Causation Without Any Intermediate
            Steps (Apple/ITC Contention #2) ............................................ 16

      C.    Apple Infringes Under the Doctrine of Equivalents ................ 19

II.   APPLE HAS FAILED TO SHOW THAT THE COMMISSION
      ERRED IN FINDING INFRINGEMENT OF THE OTHER
      DISPUTED CLAIM LIMITATIONS ................................................ 20

      A.    Substantial Evidence Supports the Commission's Finding
            That the [[██████████]] Communicates the Change
            In Accessibility (Apple Contention #3) ................................... 21

v

B.    The Commission Correctly Found That Apple's Products Maintain An Application Registry Of All "Currently Accessible" Software Applications (Apple Contention #4)............................................................................ 22

1.    The Commission's Construction of "Currently Accessible" Is Supported By the Parties' Commission Briefs and the '333 Patent ........................ 23

2.    Substantial Evidence Supports the Commission's Factual Findings Regarding Infringement.................... 26

III.    THE DROID 2 PRACTICES CLAIM 12 ......................................... 27

A.    The Commission Erred In Finding the Droid 2 Does Not Communicate the Change After a Change In Accessibility (Apple/ITC Contention #5)................................ 27

B.    Contrary to Apple's Argument, Substantial Evidence Supports the ITC's Finding That the Droid 2 Maintains a Registry of All Currently Accessible Applications (Apple Contention #5)......................................................... 31

CONCLUSION........................................................................... 33

Material has been deleted from pages v, 2-4, 7, 11-14, 16-19, 21, and 22 of the Non-Confidential Reply Brief of Appellant Motorola Mobility LLC. This material is deemed confidential business information pursuant to 19 U.S.C. §1337(n) and 19 C.F.R. § 210.5, and pursuant to the Protective Order entered November 3, 2010, and the Orders Amending the Protective Order entered January 7, 2011 and April 15, 2011. The material omitted from these pages contains confidential deposition and hearing testimony, and confidential business information, which all relate to the functionality and operation of the accused Apple products.

# TABLE OF AUTHORITIES

**Page**

## Cases

*01 Communique Lab., Inc. v. Logmein, Inc.*,
  687 F.3d 1292 (Fed. Cir. 2012) ...................................7

*American Calcar*
  651 F.3d 1318 (Fed. Cir. 2011) ............................. 17

*Ajinomoto Co., Inc. v. ITC*,
  597 F.3d 1267 (Fed. Cir. 2010) .......................... 14

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  632 F.3d 1246 (Fed. Cir. 2011) .......................... 10

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008) ...........................7

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ..................... *passim*

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
  327 F.3d 1364 (Fed. Cir. 2003) .......................... 17

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2000) ...........................7

*Netcraft Corp. v. eBay, Inc.*,
  549 F.3d 1394 (Fed. Cir. 2008) .......................... 12

*Phonometrics, Inc. v. Westin Hotel Co.*,
  319 F.3d 1328 (Fed. Cir. 2003) .......................... 33

*SanDisk Corp. v. Memorex Prods., Inc.*,
  415 F.3d 1278 (Fed. Cir. 2005) .......................... 26

*Sandisk Corp. v. Kingston Tech. Co., Inc.*,
  695 F.3d 1348 (Fed. Cir. 2012) ...........................7

## Statutes/Rules

19 U.S.C. § 1337(a)(3)(C) ........................................ 27

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| A____ | The cited page(s) of the Joint Appendix |
| AB | Apple Brief |
| ALJ | Administrative Law Judge |
| APNs | Apple Push Notification Service |
| Apple | Intervenor Apple Inc. |
| C2DM | Android Cloud 2 Device Messaging Service |
| Commission or ITC | United States International Trade Commission |
| IB | ITC Brief |
| ID | Initial Determination (A8-399) |
| Motorola | Appellant Motorola Mobility LLC |
| MOB | Motorola Opening Brief |
| Q/A | Question and Answer in Witness Statement |
| Section 337 | 19 U.S.C. § 1337 |
| '333 patent | U.S. Patent No. 6,272,333 (A1052-63) |

# **INTRODUCTION**

Apple dismisses the importance of the '333 patent by arguing that it solves "an old problem" for an "obsolete device." AB 1. Of course, the narrative Apple wants this Court to believe is that the first entry in the technology timeline of highly sophisticated smartphones starts with the introduction of the iPhone, conveniently ignoring years of technical advances made by other companies, like Motorola.

The problem solved by Motorola's '333 patent, controlling the delivery of data to mobile device applications, is just as applicable to today's smartphones as it was to the pagers described in the '333 patent. Without a hint of irony, Apple states that "[t]he availability of so many apps is a key reason for the … runaway popularity" of its products. AB 11. But that would not be true if not for inventions like Motorola's '333 patent.

While Apple argues that there are five "independent" bases for this Court to affirm the Commission's finding of no violation, each of its contentions were either rejected by the ITC, or rise and fall based on Apple and the ITC's erroneous construction of "a" to mean "every," despite this Court's well-established rule to the contrary.

***Apple and ITC Contention #1***: Apple and the ITC first argue there is no infringement because the phrase "in response to *a* change in

1

Confidential
Material Omitted

accessibility" means "in response to *every* change in accessibility."  But their erroneous claim interpretation is contrary to this Court's well-established rule that "a" means "one or more."  In order to deviate from this rule, Apple and the ITC must show that the claims or the specification of the '333 patent *necessitate* a departure from the rule, a conclusion they do not even try to make.  Under the proper construction of "in response to *a* change in accessibility," claim 12 is infringed because "[t]he parties do not dispute that the deletion of a push-enabled application [[■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■]].  IB 10 n.4.

Moreover, contrary to Apple's and the ITC's contentions, Motorola has not waived this argument.  Motorola has consistently argued that claim 12 was infringed after installation _or_ deletion, and its expert testified there was infringement based solely on the functionality of Apple's products after deletion.

Finally, even if the term "a change" required communication of "every change," Apple and the ITC's Contention #1 still fails because there is no evidence that a change in user credentials will always occur for the accused products.  If the credentials do not change, the mobile device is capable of operating in a mode where all changes in accessibility are communicated to the fixed portion of the network.  The parties agree that an

infringing device need only be capable of operating in an infringing mode, even if it does not do so in all circumstances.

*Apple and ITC Contention #2*:  Apple and the ITC next argue there is no infringement after installation of push-enabled applications, since installation is not the sole reason why the device communicates the change. This argument is not an independent ground for affirming the judgment. Should the Court reject Contention #1 and find that the claim only requires communication of "one or more changes," then there is no dispute that Apple's products infringe based on the communications sent in response to the deletion of push-enabled apps.

Contention #2 also fails because it relies on another faulty claim construction.  The term "in response to" does not require direct causation without any intervening events.  Installation is the first step in a related sequence of events that will result in the communication being sent to Apple's servers.  There is nothing in the language of claim 12 that precludes intermediate steps in the process of communicating the change.

*Apple Contention #3*:  The Commission considered and rejected Apple's argument that its devices never communicate the "change" in accessibility because the communication [[ ███████████████████ ███████████ ]].  To the contrary, the Commission found as a matter of

3

Confidential
Material Omitted

fact that [[███████████████████████████████]] communicates "the change" in accessibility.  A483.  Substantial evidence supports the ITC's finding that [[███████████████████████ ███]] communicates the change.

 ***Apple Contention #4***:  Apple's fourth argument was also considered and rejected by the Commission.  Apple asserts that its devices do not maintain an application registry of all "currently accessible" applications because the registry does not include web applications.  But Apple does not challenge any of the Commission's factual findings related to its infringement determination.  Instead, Apple boldly challenges the ITC's construction of "currently accessible," even though that construction incorporates Apple's admission below "that 'currently accessible' means that the software application is both installed and enabled for use by the subscriber unit."  A467; A3817.

 ***Apple and ITC Contention #5***:  Apple and the ITC argue the judgment also should be affirmed because the Droid 2 does not satisfy the technical prong of the domestic industry requirement.

 First, mirroring the argument made in Contention #1, they argue the Droid 2 does not communicate with the fixed portion after every installation and deletion of an application that uses the C2DM notification service.  But

as the Commission concedes, "the parties do not dispute that deletion of a C2DM-enabled application triggers the communication of an unregistration intent message to the C2DM server." IB 13 n.7. Thus, for the same reasons that Apple's products satisfy the "in response to a change in accessibility" limitation because they communicate the change after deletion of an application, so too does the same functionality on the Droid 2.

Apple raises a second argument, which the ITC does not join, that the Droid 2 does not maintain the claimed application registry because it does not list web applications or live wallpapers. But substantial evidence supports the Commission's factual determinations to the contrary. The application registry on the Droid 2 includes live wallpapers, and when the device is not accessing a web application, the registry will include a list of all currently accessible applications (because the web applications are not currently accessible in that circumstance).

## **ARGUMENT**

### I.    THE COMMISSION ERRED BY FINDING THAT APPLE DOES NOT INFRINGE CLAIM 12 OF THE '333 PATENT

#### A.    Apple's Products Infringe After Deletion Of a Push-Enabled Application (Apple/ITC Contention #1)

According to Apple and the ITC, the first reason this Court should affirm the judgment is because even if the accused devices communicate changes to the fixed portion after deletion of an application, they do not do

so after other changes in accessibility, such as a change in user credentials. AB 40.  Under their view of claim 12, the device must communicate "*every* change in accessibility to the APNS servers."  AB 33; IB 24.  They also argue Motorola waived its deletion-only argument.

This argument fails for three reasons.  First, it is based on an improper construction of "a change" to mean "every change."  Second, there has been no waiver because Motorola consistently argued that Apple's products infringe claim 12 after deletion.  Third, there is infringement even if "a change" means "every change," because Apple has failed to show that a change in credentials will always occur during use of its products.

### 1.    Apple and the ITC Improperly Construe "A Change" to Mean "Every Change"

According to claim 12, the subscriber unit acts "in response to **_a_** change in accessibility of an application" by "communicat[ing] the change to the fixed portion of the wireless communication system."  A1062(10:4-8) (emphasis added).  In arguing for affirmance, Apple and the ITC attempt to re-write this claim language such that "a change" means "every change." These arguments are directly contrary to numerous decisions of this Court that the antecedent "a" means "one or more."  Under the correct claim construction, "a change" means "one or more change," and Apple's products

6

Confidential
Material Omitted

infringe because they indisputably [[ ██████████████████ ]] in

response to the deletion of a push-enabled application.  IB 10 n.4; AB 14.

This Court has repeatedly reiterated that, absent exceptional

circumstances, the antecedent "a" means "one or more," going so far as to

describe this as a "rule" of claim construction:

> "[T]his court has repeatedly emphasized that an
> indefinite article 'a' or 'an' in patent parlance
> carries the meaning of 'one or more' in open-
> ended claims containing the transitional phrase
> 'comprising.'" ***That "a" or "an" can mean "one
> or more" is best described as a rule, rather than
> merely as a presumption or even a convention.***

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir.

2008) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356

(Fed. Cir. 2000)) (emphasis added).  "[T]his general rule applies unless 'the

language of the claims themselves, the specification, or the prosecution

history ***necessitate[s]*** a departure from the rule.'"  *Sandisk Corp. v. Kingston*

*Tech. Co., Inc.*, 695 F.3d 1348, 1360 (Fed. Cir. 2012) (quoting *Baldwin*, 512

F.3d at 1342-43) (emphasis added).  Thus, even a showing that the claim or

specification is ambiguous about the meaning of "a" is not sufficient to

overcome this general rule.  *See 01 Communique Lab., Inc. v. Logmein, Inc.*,

687 F.3d 1292, 1297 (Fed. Cir. 2012).

Apple and the ITC do not cite this rule of claim construction or make any attempt to show that the claim or the specification ***necessitate*** a departure from the rule. Instead, Apple argues that "a" can mean either "one or more" or "any," depending on the context. AB 35, 39. However, such ambiguity is insufficient to overcome the general rule that "a" means "one or more." Indeed, neither Apple nor the ITC cite a single case in which "a" was construed to mean "any."

There is nothing in claim 12 that necessitates construing "a" to mean "any." The preamble describes the purpose of the invention: "A subscriber unit in a wireless communication system ***for controlling a delivery of data*** …." A1062(9:3-5) (emphasis added). Consistent with the rest of the claim, the preamble uses the antecedent "a." Thus, as set forth in the preamble, the invention's purpose is to control one or more deliveries of data. The claim also describes how that benefit is achieved—by communicating the change to the fixed portion "in response to ***a*** change in accessibility." Both phrases use the term "a" consistent with its ordinary meaning of "one or more." Neither uses the terms "every" or "all." A separate limitation in claim 12 requires the device to maintain a registry of "all" currently accessible applications. If the inventor wanted to require control of "all" deliveries of

data or communication of "every" change in accessibility, he knew how to do so, and would have said so.

Moreover, Apple is not correct that "[i]nterpreting 'a' to be 'some, but not all' would defeat the purpose of the invention." AB 36. Apple contends a purpose of the invention was to "cut down data transmissions in order to reduce network congestion and conserve memory …." AB 8. But that purpose will be achieved even if the subscriber unit described by claim 12 controls some, but not all, of the data transmissions to the device. Any time a change is communicated, it allows the network to alter the transmission of data based upon that change. And even though Apple argues the accused products do not communicate every change, in its post-hearing brief, Apple did not dispute that such products control the delivery of data as required by the preamble of claim 12. A2663-64, 2741-42.

The specification is fully consistent with the interpretation that "a" means "one or more." The alternative embodiments described by the specification show that claim 12 does not require that the subscriber unit transmit every change in accessibility. The Summary of the Invention describes three different "aspects" of the invention. The first two "aspects" closely paraphrase independent claims 1 and 7, respectively. A1058(1:42-2:9). The patent explains for these two "aspects," the fixed portion of the

network must maintain a "current copy of the application registry" of the mobile device. *Id.* In order to do so, every change must be communicated from the device; otherwise, the network will not be able to maintain a current copy of the registry.

In contrast, the third "aspect" described in the Summary of Invention, which closely paraphrases claim 12, does not require the fixed portion to maintain a copy of the registry. A1058(2:10-24); A481. Thus, unlike claims 1 and 7, claim 12 does not require the device to communicate every change to the fixed portion of the network because the network does not maintain a current copy of the subscriber unit's application registry. *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) (the doctrine of claim differentiation weighs against adding limitations present in other independent claims); A481.[1]

Indeed, Apple argued before the Commission that claim 12 requires that the fixed portion maintain a copy of the registry (A259), but the Commission flatly rejected this argument, finding that "to read such a requirement into claim 12 would entail importing numerous limitations from

---

[1] Motorola's expert did not testify that "every" change must be communicated, as Apple contends. AB 39 (citing A13,529). Rather, he testified that whatever the change is (e.g., installation, deletion) is then communicated by the device.

**Confidential Material Omitted**

both other independent claims as well as from the specification of the '333 patent into the language of claim 12." A482.

Likewise, there is no mention in the specification that the claimed invention is designed to control *every* piece of data that is delivered to the subscriber unit. To the contrary, the specification explains that the fixed portion of the network sends a number of different types of signals to the subscriber unit, including commands for adjusting the operating parameters of the radio communication system. A1059(3:4-9). Yet, the specification contains no discussion of how transmission of these commands is controlled by the claimed invention.

Finally, Figure 4 of the patent does not compel a different result, as Apple contends. AB 37. Consistent with claim 12, it describes communication of the change in response to "a change in accessibility"—not every change in accessibility. A1056. There is nothing in this figure that requires the subscriber unit to communicate *every* change accessibility.

Apple and the ITC have failed to show that either claim 12 or the specification *necessitate* a deviation from the rule that "a" means "one or more." Under the correct construction, Apple's products indisputably will

[[███████████████████████████████████████████████]

**Confidential Material Omitted**

███████████████████████████████████████████ ]], and

therefore meet this limitation of claim 12.  IB 10 n.4; AB 14.[2]

### 2.    Motorola Preserved Its Argument That Apple Infringes After Deletion of Push-Enabled Applications

Apple and the ITC contend that "Motorola never before argued that

the limitation 'in response to *a* change in accessibility' requires only

communicating whether an application has been installed *or* deleted."  IB 26

(emphasis in original); AB 44-45.  They also claim Motorola never argued

that deletion alone "is sufficient to satisfy all of the limitations of claim 12."

IB 26.  Both of these claims are demonstrably false.

Motorola's expert Dr. Madisetti testified that claim 12 is infringed

based on the deletion functionality alone.  When asked to explain how "the

deletion of applications satisf[ies] the element of claim 12 requiring a

communication of the change to the fixed portion of the wireless

communication system," Dr. Madisetti testified:

> … When a user deletes an application for which
> push notifications were enabled, [[ ████████████
> █████████████████████████████████

---

[2]    In the *Netcraft* case cited by Apple, the specification "repeated[ly]"
stated that "the present invention" required a third party to provide Internet
access.  *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398 (Fed. Cir. 2008).
Here, by contrast, claim 12 does not require the fixed portion to maintain a
copy of the registry, and there are no statements, much less "repeated"
statements, that the invention requires communication of every change.

Understanding.

Confidential
Material Omitted



… Thus, [            ]]

[            ]] *satisfies the element of claim 12 requiring a communication of the change to the fixed portion of the wireless communication system*.

A10,686-87 (Q/A 345) (emphasis added); A10,684 (Q/A 339).

Similarly, Dr. Madisetti testified that Apple's products infringe other limitations after deletion. He testified the preamble was infringed because Apple's products "control the delivery of data from the fixed portion of the wireless communication system after the deletion of an application …." A10,669-70. Likewise, he testified that "the deletion of applications satisfies the element of claim 12 requiring an update of the application registry in response to a change in accessibility of an application." A10,686.

Based on this testimony, Motorola argued in its post-hearing briefs that there was infringement "[a]fter installation *or* deletion of a push-enabled application." A3006-07; A2597. In its Commission petition, Motorola cited Dr. Madisetti's testimony that deletion alone infringes, and argued there was infringement after deletion because "the deletion of an application also will trigger [[

**Confidential
Material Omitted**

███ ]].” A3230 (citing A10,686-87 (Q/A 345)), A3227. Motorola

devoted eleven pages of its Commission petition to this limitation (A3227-

3237), and repeatedly argued to the ITC that Apple infringed after

installation *or* deletion, as shown by every page from the petition cited in

Apple's brief. A3210, A3227, A3233, A3234.

In its Commission petition, Motorola made the same argument at

issue here: that claim 12 requires the communication to occur in response to

"one or more"—not "all"—changes in accessibility (A3229), and "even

assuming the expiration of credentials is a change in accessibility,

infringement may still be found if the accused devices communicate changes

in accessibility under other circumstances." A3234. In its opposition, Apple

addressed this "part-time" infringement theory (A3525), and the parties

repeated these arguments in later Commission briefing. A3578 (Motorola

arguing to the ITC that the ALJ erred in "finding that all changes in

accessibility must be communicated"), A3584; A3907-08; A3958.

Thus, the facts here are far removed from the waiver found in the case

cited by Apple, where the argument below was limited to a "single

sentence." AB 45; *Ajinomoto Co., Inc. v. ITC*, 597 F.3d 1267, 1278 (Fed.

Cir. 2010).

### 3.    Apple's Devices Infringe Even If "A Change" Means "Every Change"

Even if the term "a change" required communication of "every change," Apple's Contention #1 would fail.  Apple argues that a change in user credentials qualifies as a change in accessibility and that these changes are not communicated to the fixed portion.  AB 40.  But Apple improperly assumes that a change in user credentials will always occur during use of its products.  There is no evidence in the record to that effect, and Apple has not cited any support for this assumption in its brief.

If the Court finds that Apple has failed to show that a change in credentials will always occur during operation of its products, then it should find infringement because Apple's products are capable of operating in a mode where all changes in accessibility are communicated to the fixed portion.  The parties agree that to infringe "a claim that recites capability, an infringing device need only be capable of operating in an infringing mode, even if it does not do so in all circumstances."  IB 25 (citing *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010)); AB 42.  Thus, if user credentials do not change, Apple's products are capable of operating in a mode where they will communicate changes in accessibility in response to the deletion and installation of push-enabled applications.

Confidential
Material Omitted

## B.    Apple's Products Also Infringe After Installation of Push-Enabled Applications Because Claim 12 Does Not Require Direct Causation Without Any Intermediate Steps (Apple/ITC Contention #2)

In their second reason for affirming the judgment, Apple and the ITC argue there is no infringement because installation of push-enabled applications does not directly cause the communication to the fixed portion. AB 50; IB 37.  They assert claim 12 requires a "direct, one-to-one causal relationship between the change and the communication"—*i.e.*, installation must trigger the communication "without the need for any intervening user action." AB 55.  According to Apple and the ITC, because the [[ ███████ ███████ ]] is not sent until the first use of an installed application, the communication is not sent in response to installation, and this provides an independent ground to affirm the judgment.  AB 32, 48-50; IB 38.

As an initial matter, this argument is not an independent ground for affirmance.  AB 32.  Should the Court reject Apple's and the ITC's argument that "a" means "every," the direct causation argument becomes moot because the parties agree that deletion of an application [[ ██████████ ██████████████████████████████ ]] to the fixed portion.  IB 10 n.4.

Moreover, Contention #2 also fails because it relies upon a construction that improperly imports numerous limitations into the claim by

16

Confidential
Material Omitted

requiring "direct causation" that excludes intervening steps. Claim 12 is a "comprising" claim that allows for additional steps. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003). The '333 patent contemplates that changes may be communicated to the fixed portion pursuant to "synchronization routines," which suggests additional steps may be involved before the device communicates the change. A1060(5:59-63).

Apple cites the *American Calcar* case, where the inventors "clearly and unmistakably" "distinguish[ed] the claimed invention as one where the identification of service providers is solely in response to a vehicle condition determined by a processor." 651 F.3d 1318, 1340 (Fed. Cir. 2011). The '333 patent, by contrast, lacks any clear disclaimer of intervening steps involved in communicating the change, and Apple and the ITC have failed to show otherwise.

According to Apple, there is no connection between installation and the resulting communication because the [[███████████]] will not be sent unless "the user … opt[s] to allow push notifications for the application." AB 51. But Apple's products will send the [[████████████████ ████████████████████████████████ ███████████████████████████████ ███████]]. MOB 18; A10,667-68; A13,531. There is no middle ground

**Confidential
Material Omitted**

where [[██████████████████]].  Thus, installation sets in motion

a sequence of events that inevitably result in communication of the change,

because "[t]he first time a push-capable application is run, iOS asks the user

if they want to receive push notifications for th[e] app."  A7186; AB 13-14;

MOB 44.

Apple and the ITC argue that a user hypothetically can install an app

but not use it right away, thereby delaying communication [[████████

████████]].  IB 38; AB 54.  But Apple's documents establish that [[████████

████████]] is "typically" sent "right after" the app "is installed on the

device," which is logical, since most people will open an application they

have just purchased.  A7412.[3]  While temporal proximity is a factor to be

considered, the connection here is even stronger, because installation causes

iOS to prompt the user to register for push notifications the first time the app

is run, which will [[██████████████████████]].

A7186; A13,544.[4]

---

[3]    Even if temporal proximity is a determinative factor, which it is
not, Apple's products will "typically" [[████████████████]] shortly
after installation of many applications, which is sufficient to establish
infringement.  *Finjan*, 626 F.3d at 1204; A7412.

[4]    Motorola's expert did not testify otherwise, as Apple claims.  AB
52 (citing A13,552).  Rather, he simply acknowledged that [[████████
████████]] will be sent after the first use of a push-enabled application.

The hypothetical possibility for delay in the transmission [[███████

██████]] is not inconsistent with the goal of the '333 patent.  Until a user

opens a new application, push notifications are not needed because [[████

███████████████████████████████████]].  A4870.  The

[[█████████████████████████████████████████████

███████████]], thereby allowing the network to control the delivery

of notifications to the application.  Moreover, Apple and the ITC do not

dispute that a user may have to open a new application in order to enter her

login or subscription information, and under the ITC's construction, the

resulting [[█████████]] would be sent in response to the change in

accessibility (the change in credentials).  A486.

## C.    Apple Infringes Under the Doctrine of Equivalents

Apple and ITC argue this Court should affirm the finding of no

infringement under the doctrine of equivalents, which was based on the

ITC's erroneous factual conclusion that there "is simply nothing in the

accused devices" that "communicate[s] a change in the availability of

software applications."  A489; MOB 47.  Rather than defend that finding,

which is inconsistent with the undisputed operation of Apple's products after

deletion (IB 10 n.4), Apple and the ITC reassert several arguments they

raised concerning literal infringement.

Apple and the ITC argue that "Motorola did not argue below that deletion alone sufficed to establish infringement under the doctrine of equivalents." AB 47; IB 43. But in his testimony regarding the doctrine of equivalents, Motorola's expert testified there was infringement after installation *or* deletion. A10,687; *see* A10,665, 10,669-71. Next, Apple argues that deletion alone cannot infringe because the invention would be "worthless" (AB 47), but as discussed above, claim 12 does not require communication of "all" changes in accessibility. Section I.A.1., *supra*. The result of the push functionality is not "confusion," as Apple contends (AB 48), but "a robust and highly efficient service for propagating information" to the accused devices. A10,995.

## II.    APPLE HAS FAILED TO SHOW THAT THE COMMISSION ERRED IN FINDING INFRINGEMENT OF THE OTHER DISPUTED CLAIM LIMITATIONS

In its third and fourth reasons for affirming the judgment of no infringement, which the ITC does not join, Apple asks this Court to overturn the ITC's factual findings that Apple infringed two other disputed claim elements. Substantial evidence supports the Commission's determinations, and Apple has not overcome the "high barrier" to show otherwise. AB 50.

**A.    Substantial Evidence Supports the Commission's Finding
That the [[███████]] Communicates the Change In
Accessibility (Apple Contention #3)**

Apple contends the Commission erred in finding that its products

communicate "the change" in accessibility to the fixed portion, because the

[[███████████████████████████████

█████]].  According to Apple, "it is undisputed … that when accessibility

changes on a device, the device [[██████████████████████

██████████]]."  AB 56.

The Commission considered and rejected Apple's argument, finding

as a matter of fact that Apple's products communicate the change in

accessibility [[█████████████████████████]].  A483.

Substantial evidence supports the Commission's finding.  *Id*.

Apple argues the "sole ground" for the Commission's decision is its

finding that claim 12 does not require the fixed portion to maintain a

registry.  AB 59.  But as the Commission found, "claim 12 does not specify

precisely what form the 'communicat[ion]' between the subscriber unit and

the fixed portion must take in order to 'communicate the change ….'"

A483; IB 19.  There are many ways to communicate a change in

Confidential
Material Omitted

accessibility, and the '333 patent does not limit the broad ordinary meaning of this step.[5]

As Motorola's expert testified, and the ITC found, the change can be communicated where, as here, [[ ███████████████████████ ███████████ ]].  A483; A10,686-87.  Similarly, it can be communicated when the installed application [[ ███████████████████ ]].  A483; A10,685-86.  In both instances, the communication allows the fixed portion to control the delivery of data to the device.  A10,667-70.  The Commission correctly rejected Apple's argument that claim 12 requires the fixed portion to maintain a copy of the registry in order to figure out what changes have occurred.  A483; Section I.A.1., *supra*.

**B.   The Commission Correctly Found That Apple's Products Maintain An Application Registry Of All "Currently Accessible" Software Applications (Apple Contention #4)**

In its fourth reason for affirming the judgment, Apple asks this Court to overturn the ITC's claim construction and factual findings related to the requirement in claim 12 that the device "maintain … a list of all software applications that are currently accessible to the subscriber unit."  AB 60.  The ITC's construction and factual determinations are correct.  In the

---

[5]   In its post-hearing and Commission briefs, Apple did not present any claim construction arguments related to communication of "the change."  *See* A2737, A3510-14.  It should not be allowed to limit the form of the communication by raising new arguments on appeal.

proceedings below, the parties ultimately agreed on the meaning of "currently accessible," and the ITC incorporated that understanding in its construction.  A467.  Based on that agreed construction and the Court's holding in *Finjan*, the ITC properly found infringement because Apple's products will maintain a registry of all currently accessible applications when they are not accessing web applications.  A478-79.

> **1.    The Commission's Construction of "Currently Accessible" Is Supported By the Parties' Commission Briefs and the '333 Patent**

The Commission found that "currently accessible" applications are those that are "available and enabled for present use by the subscriber." A467.  Apple asks this Court to reject that construction, and instead adopt the ALJ's construction under which "currently accessible" applications can "'reside nearly anywhere, whether physically connected to the subscriber unit or not, such as on the cloud, on the web, or a base station, so long as the subscriber has the right to currently access the software application.'"  A465 (citing A219).

Apple's bold request is inconsistent with the briefs it and Motorola filed to help the Commission "more accurately assess the scope of the phrase 'currently accessible.'"  A466.  During its review, the Commission asked the parties whether a regular application (not a web application) becomes

"currently accessible" (i) when installed or (ii) when installed and enabled for use. *Id*. In their responses, the "parties agree[d] that [such] a software application is 'currently accessible' within the meaning of the '333 patent when it is both installed and authorized or enabled for use on a device." A467; *see* A3579; A3817.

Accordingly, the Commission adopted the parties' understanding in its construction that "currently accessible" means "available and enabled for present use by the subscriber." A467. Apple does not address any of these facts in its brief, much less explain how the Commission erred in adopting a construction based on the parties' common understanding.

Instead, Apple urges the Court to adopt the ALJ's construction, under which currently accessible applications include anything "the subscriber has the right to currently access." A465. But as the ITC found, the ALJ's construction is overly broad and contrary to the patent because it does not explain what is meant by "'the right to currently access the software application,' *e.g.*, whether 'the right' includes authorization, access, etc." A465.

Contrary to Apple's argument, the '333 patent fully supports the ITC's construction because it describes "currently accessible" applications "as those applications that the subscriber unit is actually capable of

accessing in a real, rather than hypothetical, sense." A465-66 (citing A1059 (3:67-4:4, 4:63-66, 5:30-37)). As the Commission found, "[i]nherent in the concept of the claimed scheme of a 'controll[ed] delivery of data' recited in claim 12 is that the subscriber unit only has 'current[] access[]' to fewer than all possible software application that the subscriber unit may potentially use." A465. Apple's expert and the ALJ agreed and found that applications on Apple's App Store are not "currently accessible." A263; A11,413. Thus, as the Commission held, "the meaning of 'currently accessible' clearly cannot be as broad as to include all applications which the subscriber unit has some generic *right* to access." A465.

The Commission considered and rejected Apple's argument that the prosecution history of the '333 patent shows that downloadable software applications are "currently accessible." AB 65; A467. During prosecution, the Patent Office rejected the claims in light of the DeLuca '737 patent. A4648. In response, the inventor argued that the software programs in DeLuca that could be delivered to a mobile device "over the air" were not currently accessible. A4653. As the Commission correctly found, the inventor's argument "implies that 'currently accessible' software … does not include software that does not currently reside on the device, but may be downloaded 'over-the-air.'" A467. Based on these same prosecution

remarks, Apple's expert concluded that downloadable applications on Apple's App Store are not "currently accessible."[6] A10,659-60.

Apple relies heavily on a claim construction by Judge Robart in another case involving the '333 patent. AB 61. However, Judge Robart's analysis suffers from the same flaws as the ALJ's construction. As described above, these flaws were considered and rejected by the Commission. A468-69. Moreover, Judge Robart did not address the availability of web applications. *Id.*

### 2. Substantial Evidence Supports the Commission's Factual Findings Regarding Infringement

Substantial evidence supports the Commission's factual finding that Apple's products "maintain an application registry comprising a list of all software applications that are currently accessible." A480. Based on the *Finjan* case, the Commission correctly found that Apple's products will maintain a registry of all currently accessible applications when they are not accessing web applications. A478; *Finjan*, 626 F.3d at 1205. In so finding, it "rejected the ALJ's unsupported assumption that web applications are, in

---

[6] In any event, there is more than one reasonable interpretation of the prosecution history, because Apple and the ITC have opposite interpretations of the same remarks. Thus, there is no clear and unmistakable indication that the inventor meant that all downloadable applications are currently accessible. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

all situations, currently accessible to the accused devices under the

Commission's modified construction of the limitation 'currently accessible'

of claim 12." IB 33.

A web application lives on a web server and is transmitted to a device

where it runs in the Safari browser. A6500; A10,679. Thus, as the

Commission found, until a user opens the Safari web browser and accesses a

web application, the application is not "available and enabled for present

use" by the device. A477. This factual finding is directly supported by

Apple's own documents and is not clearly erroneous. A6500; A10,679.

## III.  THE DROID 2 PRACTICES CLAIM 12

### A.  The Commission Erred In Finding the Droid 2 Does Not Communicate the Change After a Change In Accessibility (Apple/ITC Contention #5)

Apple contends that even if this Court finds infringement, Motorola

cannot prevail unless it also establishes the technical prong of the domestic

industry requirement. AB 67-68. But the Commission took no position

whether Motorola has met the domestic industry requirement for the '333

patent due to its licensing activities pursuant to 19 U.S.C. § 1337(a)(3)(C).

A501 n.25. As a result, should the Court find claim 12 infringed but not

practiced by the Droid 2, the case should be remanded to the Commission

for further findings regarding the licensing prong of the domestic industry requirement.

In any event, the Droid 2 practices claim 12. In defending the ITC's *sua sponte* decision to review and reverse the ALJ's finding that the Droid 2 sends registration and unregistration intents "in response to" changes in accessibility, Apple and the ITC raise the same claim construction arguments they made concerning non-infringement. For the same reasons that Apple's products infringe the "in response to a change in accessibility" limitation after deletion of a push-enabled application (Contention #1), the Droid 2 also satisfies this requirement after deletion of C2DM-enabled applications.

Apple and the ITC argue that Motorola waived any argument "that uninstallation of an application is sufficient" to satisfy the claim. IB 47; AB 72. But Motorola's expert testified the Droid 2 will practice claim 12 based on deletion alone. When asked how "the deletion of applications on the Droid 2 satisf[ies] the … preamble," Dr. Madisetti testified this element was met because the Droid 2 communicates "the deletion … to the C2DM service, so that messages are no longer sent to the Droid 2 …." A10,690.

Similarly, when asked how the Droid 2 satisfies the final limitation in claim 12, Dr. Madisetti testified "[w]hen applications are installed *or*

deleted, Android will update the application registry in the Droid 2, and control the transmitter to communicate the change to the fixed portion of the wireless communication system." A10,697 (emphasis added). He further explained that "[w]hen an application is deleted from the Droid 2 that was previously registered to receive messages from the C2DM service, the deletion is communicated to the C2DM service, so that messages are no longer sent to the Droid 2 …." A10,698.

Motorola cited this testimony in its briefing to the ALJ (A274), and in its briefs, Apple also addressed the "unregistration intent sent when an application is uninstalled …" A283. There was no reason for Motorola to raise this issue in its Commission petition, because the ALJ found that the Droid 2 satisfied this element. A298. No waiver has occurred.

Under a proper construction of "a" to mean "one or more," the undisputed facts show that the Droid 2 will communicate the change (the unregistration intent) in response to one or more change in accessibility (deletion of a C2DM-enabled app). IB 13 n.7 ("[t]he parties do not dispute that deletion of a C2DM-enabled application triggers the communication of an unregistration intent message to the C2DM server."); *see* A8119; A10,698.

Apple argues that the registration intent sent after deletion does not "communicate the change." AB 71. But there is nothing in the record that supports this argument. Apple's expert did not raise this argument in his witness statement, and the Commission did not make any findings on this point. A495. The only expert to address this question was Motorola's expert, who testified that the Droid 2's registration and unregistration intents communicate the change because they identify the application that is being registered or unregistered. A10,698; A8118, A8120.

Apple and the ITC also have failed to identify any error in the ALJ's conclusion that the Droid 2 will practice this limitation after installation of a C2DM-enabled application. Apple argues that although a user "must approve the use of the C2DM functionality to install the application," it does not mean "that the user's approval is communicated to the C2DM server." AB 69-70; A8119. But according to the Google document being referenced, approval means registration because the following two sentences discuss situations that will result in "unregistering" from the C2DM service. A8119. Read in context, the sequence of steps is clear: (i) the application supporting C2DM is installed, (ii) as part of the installation process, the user approves the use of the C2DM service, and (iii) the device sends a registration intent to the C2DM servers the first time it needs to use the messaging service.

A8118-19; A10,698.  Thus, as the ALJ found, the change is communicated in response to installation.

> **B.    Contrary to Apple's Argument, Substantial Evidence Supports the ITC's Finding That the Droid 2 Maintains a Registry of All Currently Accessible Applications (Apple Contention #5)**

Apple's final argument, which the Commission does not join, is that the ITC erred in finding that the App tray on the Droid 2 maintains an application registry with a list of all currently accessible applications.  AB 72-75.

First, Apple argues that the list of applications in the App tray does not include web applications.  AB 73.  But this argument fails for the same reason as Apple's non-infringement argument based on web apps.  The Commission correctly construed the term "currently accessible," and then found that a web application is "currently accessible" when it is being accessed by the device.  A490.  Based on the *Finjan* case, the Commission found infringement because the Droid 2 will maintain a registry of all accessible application when it is not accessing a web application.  A490, A494.  Substantial evidence supports these findings.  A9474 ("[t]he App tray shows you all of your applications."); A10,696; A10,945.

Second, Apple argues that live wallpapers—animated backgrounds that run on the home screen—also are not represented in the registry.  AB

73. On the Droid 2, live wallpapers can be selected from the Live Wallpaper Picker, which the Commission found was part of the application registry. A493; A9502; A11,427-28; A12,608. Apple argues "there is no record basis for the Commission's conclusion that the App Tray is the same as the sequence of menus from which a user can select a Live Wallpaper." AB 75. Apple is not correct.

The record shows that the Live Wallpaper Picker is part of the system software that, in conjunction with the App Tray, displays the currently accessible software applications and is therefore part of the registry. A12,608. As the Commission found, because it is part of the registry, it is irrelevant that the Live Wallpaper Picker is not represented as an icon in the App Tray. A493-94. The Commission did not improperly shift the burden of proof regarding this issue, as Apple contends. AB 74. Motorola introduced substantial evidence that the Droid 2 maintains a registry of all currently accessible applications. A10,694; A9474. The Commission then correctly found that Apple failed to rebut this proof. A493.

Moreover, Apple's brief does not even mention the Live Wallpaper Picker, or the Commission's finding that it is part of the application registry. A493-94. Below, Apple argued that the Live Wallpaper Picker is a software application that is not present in the application registry. *Id*. On appeal,

however, it only challenges whether live wallpapers (not the Live Wallpaper Picker) are present in the registry.  AB 73-75.  Having failed to challenge any of the Commission's findings regarding the Live Wallpaper Picker, Apple's argument must be rejected.[7]

## CONCLUSION

For the foregoing reasons, this Court should reverse and remand.

---

[7]    In its brief, Apple cites a variety of websites that should not be considered because they are not part of the record.  *See* AB 11, 18-19, 73; *Phonometrics, Inc. v. Westin Hotel Co.*, 319 F.3d 1328, 1333 (Fed. Cir. 2003).

Dated:  June 14, 2013                 Respectfully submitted,

By:  _____ *s/* Edward J. DeFranco _____
    Charles K. Verhoeven
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    50 California St., 22nd Floor
    San Francisco, CA  94111
    Tel.  (415) 875-6600
    Fax.  (415) 875-6700

    Edward J. DeFranco
    Alexander Rudis
    Mark D. Baker
    Matthew A. Traupman
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    51 Madison Ave., 22nd Floor
    New York, NY  10010
    Tel.  (212) 849-7000
    Fax  (212) 849-7100

    David A. Nelson
    QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
    500 W. Madison St., Suite 2450
    Chicago, IL  60661
    Tel.  (312) 705-7400
    Fax  (312) 705-7401

    *Attorneys for Appellant Motorola*
    *Mobility LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of June, 2013, the non-

confidential version of the Reply Brief of Appellant Motorola Mobility LLC

was served via FedEx on the following counsel of record:

Megan M. Valentine
Wayne Herrington
U.S. International Trade Commission
Suite 707
500 E Street, S.W.
Washington, DC  20436

*Attorneys for Appellee United States
  International Trade Commission*

Mark A. Perry
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

*Attorney for Intervenor Apple Inc.*

E. Joshua Rosenkranz
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019

*Attorney for Intervenor Apple Inc.*

Respectfully submitted,

  *s/Edward J. DeFranco*
  *Attorney for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH</u><br><u>FED. R. APP. P. 32(a)(7) AND FEDERAL CIRCUIT RULE 32</u>

Counsel for Appellant Motorola Mobility LLC certifies that the brief contained herein has a proportionally spaced 14-point typeface, and contains 6,996 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes.  Pursuant to Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, and Table of Abbreviations.

Dated:  June 14, 2013                          Respectfully submitted,

                                                 *s/Edward J. DeFranco*
                                                 *Attorney for Appellant*